IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MELINDA J. LOPEZ, )<br>    Plaintiff, )<br>)<br>    vs )<br>)<br>PRUITTHEALTH HOSPICE, INC., )<br>a/k/a UNITED HOSPICE INC., a/k/a/ )<br>PRUITT HEALTH, Inc. a/k/a UHS-PRUITT )<br>CORPORATION, )<br>    Defendant. ) | **COMPLAINT**<br>(Jury Trial Demanded) |

NOW COMES Plaintiff Melinda J. Lopez, by and through undersigned counsel complaining of the acts of the defendant, PruittHealth Hospice, Inc., a/k/a United Hospice Inc., a/k/a/ Pruitt Health, Inc., a/k/a UHS-Pruitt Corporation, of North Carolina, and says:

### THE PARTIES

1. Plaintiff Melinda J. Lopez herinafter (Ms. Lopez) is an adult female and resident of the Cary, Wake County, North Carolina. Ms. Lopez was an employee of the defendant.

2. Defendant is a corporation organized and operating under the laws of the State of Georgia and is engaged in the business of providing hospice care to terminally ill patients in North Carolina. The name changed from United Hospice Inc. to PruittHealth Hospice, Inc., they are a/k/a/ Pruitt Health, Inc., and UHS-Pruitt Corporation, herinafter (Pruitt).

### JURISDICTION

3. This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §37332(a), 28 U.S.C. §1331, and H.R.3590 §6402, 42 U.S.C. 1320a-7b and 28 U.S.C. §1345.

## VENUE

4. Venue in the Eastern District of North Carolina is proper pursuant to 28 U.S.C. §1391 because all or a substantial part of the events or omissions which give rise to the present claims occurred in this judicial district, and more specifically within the county of Wake, State of North Carolina.

## FACTS

5. Ms. Lopez is a Licensed Clinical Social Worker (LCSWA). She was employed by defendant at the United Hospice facility in Smithfield, North Carolina.

6. In the fall of 2013, Ms. Lopez observed behavior which she believed to be a violation of the False Claims Act (FCA) 31 U.S.C. §§3729 *et.seq* and N.C. Gen. Stat. §16-7.

7. Ms. Lopez observed a Certified Nursing Assistant ("CNA") leaving the facility shortly after her arrival. The CNA was scheduled to provide services to three (3) patients and those services could not be provided within such a short period of time. Subsequently, Ms. Lopez learned that the CNA had documented services she had, in fact, not provided.

8. A nurse, Ms. Kim Westbrook was also concerned that the CNA left the facility without providing clinical services.

9. Ms. Lopez and Ms. Westbrook reported the incident to the Director of Health Services, Ms. Billy Jean Lockemy herinafter (Ms. Lockemy).

10. In their presence, Ms. Lockemy pulled the time sheets for the CNA and stated that the CNA logged herself in as being with each of the three (3) patient's for a total of two (2) hours.

11. Ms. Lopez told Ms. Lockemy that she believed billing for services not provided was Medicare/Medicaid fraud under the False Claims Act.

12. Ms. Lockemy's response was that she did not believe it was fraud. Upon information and

belief, Ms. Lockemy took no action to rectify the matter.

13. Following the incident with Ms. Lockemy, Ms. Lopez began to receive complaints from families of her patients, that they were not being provided services for which Medicare/Medicaid was paying.

14. On or about January 26, 2014, Ms. Lopez went to the facility administrator, Mr. Jason Whiteside herinafter (Mr. Whiteside) and explained the situation to him. She told him she believed that documentation of services not provided was Medicare/Medicaid Fraud. He told her they would "talk about it later."

15. On January 27, 2014, the day after her complaint, Mr. Whiteside gave Ms. Lopez a verbal counseling because she was not entering her Interdisciplinary Group ("IDG") notes correctly, despite the fact that she had not had any training or orientation on how to do the documentation. He also indicated that the IDG team felt that she was an ineffective member.

16. Ms. Lopez had a meeting with Ms. Lockemy following an audit. Ms. Lockemy told her that she had not been documenting "missed" visits correctly. She explained to Ms. Lopez that because of the incorrect documentation, Medicare/Medicaid paid for visits which had actually not occurred.

17. Ms. Lopez asked if she should go back through her records for the year, pull up all her missed visits so that the facility could reimburse Medicare/Medicaid for visits that were incorrectly documented. Ms. Lockemy said, "No. We are not going to worry about that right now. What's done is done. I am just talking about the future."

18. In or around the third week in February 2014, Ms. Lopez contacted L. Robyn Woods in the corporate Human Resources office. Ms. Woods had a telephone conference with Ms. Lopez and Mr. Whiteside concerning his write up of the verbal counseling given to Ms. Lopez . Mr.

Whiteside admitted he was not "accurate" in his write up of Ms. Lopez and would try to be more accurate in the future.

19. On or about February 21, 2014 Ms. Lopez reported a family complaint to Mr. Whiteside. At approximately 1:48 pm, Ms. Lopez received a text from Mr. Whiteside it stated " I was told that every thing was good and the CNA was going in the morning. Please let me know if that is not the case and the family is upset." Ms. Lopez responded " Ok. No prob...Med problem solved I'm bring them their meds shortly" Ms. Lopez sent Mr. Whiteside a follow up text as requested that the family was not happy, the CNA did not call or go see patient. Ms. Lopez again, told Mr. Whiteside she believe documenting visits not made was Medicare/Medicaid fraud.

20. On February 22, 2014, Ms. Lopez sent the Chairman and CEO of the Company, Mr. Neil L. Pruitt, Jr. a lengthy email detailing her concerns and her belief that Mr. Whiteside was retaliating against her. He responded by email that he would have his Chief Human Resource Officer, Mr. George Hunt " to look into your concerns". Ms. Lopez did not hear from Mr. Hunt or Mr. Pruitt.

21. On Monday, February 24, 2014, Ms. Lopez discussed the situation with the Regional Manager, Zack Lee. He told her that he did not feel the issue with the CNA was technically fraud because Medicare/Medicaid pays the facility one lump sum. Ms. Lopez reiterated her belief that documenting services not provided did constitute fraud.

22. During the meeting with Mr. Lee, Ms. Lopez also expressed concern that Mr. Whiteside and Ms. Lockemy would terminate her employment because she reported her concerns. Mr. Lee assured her that she would not be terminated.

23. The next day, Tuesday, February 25, 2014, Ms. Lopez was called into a meeting with Ms. Lockemy. Mr. Whiteside was there via telephone conference. Mr. Whiteside began the

conversation with the words, "This is not in retaliation for you making the fraud allegations."

24. Mr. Whiteside stated he was terminating her employment for two (2) reasons. The first reason was because she had discussed her verbal disciplinary action of January 27, 2014 with other employees. The second reason Mr. Whiteside gave for her termination was that he heard a rumor than she was going to use the corporate conference line with the nurses for a conference call to discuss their experience with the CNA. Ms. Lopez did not use the Corporate Conference line.

## FIRST CAUSE OF ACTION
## 31 U.S.C.S. § 3730(h)(1)

25. Ms. Lopez incorporates paragraphs 1 through 24 as if fully set forth below.

26. Ms. Lopez engaged in protected conduct when she reported what she believed was fraud to the administration of the facility, the Regional Manager Mr. Zack Lee and the Chairman and CEO of the company Mr. Neil L. Pruitt, Jr.

27. Her objection to the conduct could reasonably have led to a viable 31 U.S.C.S. § 3729 False Claims Act (FCA) action.

28. The defendant knew that Ms. Lopez was engaged in protected conduct.

29. Ms. Lopez was discharged because she engaged in protected conduct.

30. As a direct and proximate cause of the defendant's conduct, Ms. Lopez has suffered and continues to suffer loss of income and emotional distress.

## SECOND CAUSE OF ACTION
## N.C. Gen. Stat. § 1-613

31. Ms. Lopez incorporates paragraphs 1 through 30 as if fully set forth below.

32. Ms. Lopez engaged in protected conduct when she reported what she believed was fraud to the administration of the facility, the Regional Manager and the Chairman and CEO of the

company.

33. Her objection to the conduct could reasonably have led a viable claim under N.C. Gen. Stat. § 1-607.

34. The defendant knew that Ms. Lopez was engaged in protected conduct.

35. Ms. Lopez was discharged because she was engaged in protected conduct.

36. As a direct and proximate cause of the defendant's conduct, Ms. Lopez has suffered and continues to suffer loss of income and emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Lopez prays the Court:

1. Order that Ms. Lopez be reinstated with the same seniority status;

2. Order the defendant to pay two (2) times the amount of back pay with prejudgment interest;

3. Order the defendant to pay any special damages including emotional distress damages.

4. That it award Ms. Lopez litigation costs and reasonable attorneys' fees; and

5. Order any other relief the Court deems just and reasonable.

This the 4th day of August 2014.

**MEYER LAW OFFICES, P.A.**

**By:** /s/ Deborah N. Meyer
Deborah N. Meyer
N.C. State Bar No. 19186
401 Harrison Oaks Blvd., Ste 321
Cary, North Carolina 27513
Telephone: (919) 678-8200
Facsimile: 919-678-8280
Email: Dmeyer@meyerlawnc.com
*Attorney for Plaintiff*

STATE OF NORTH CAROLINA

COUNTY OF WAKE

## VERIFICATION

Melinda Lopez, Being first duly sworn, according to law, deposes and states:

That she is the Plaintiff in the foregoing action; that as such she is authorized to make this Verification; that she has read the foregoing Demand and knows the contents thereof; that the same is true of her own personal knowledge, except as to matters and things therein stated upon information and belief, and that as to those such matters and things, she verily believes it to be true.

*Melinda López*
Melinda Lopez
Plaintiff

Subscribed and Sworn to before me this

22 day of July, 2014

*Sherri Blackwood*
Notary Public

My Commission Expires: 12-27-2014